## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**COMPANION PROPERTY &**
**CASUALTY INSURANCE COMPANY**
51 Clemson Road
Columbia, South Carolina 29229

Plaintiff

v.

**APEX SERVICE, INC.**
3705 Benning Road, N.E.
Washington, D.C. 20019-2645

SERVE ON: Douglas L. Worthing
             1 Tapiola Court
             Rockville, MD 20850

and

**GRAYBAR ELECTRIC CO., INC.**
34 N. Meramec Avenue
Clayton, MO 63105

SERVE ON: CSC- Lawyers Incorporating
             Service Company
             7. St. Paul Street
             Suite 1660
             Baltimore, MD 21202

and

**BRANCH GROUP, INC. t/a REXEL**
7 St. Paul Street
Suite 1660
Baltimore, MD 21202

SERVE ON: CSC- Lawyers Incorporating
             Service Company
             7. St. Paul Street
             Suite 1660
             Baltimore, MD 21202

and

CASE NO. _____

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

**UNITED RENTALS (NORTH**                 *
**AMERICA), INC.**                 *
Four Greenwich Office Park
Greenwich, CT 06830                 *

SERVE ON:  CSC- Lawyers Incorporating
               Service Company       *
               7. St. Paul Street
               Suite 1660          *
               Baltimore, MD 21202
                                     *

and                                   *

**UR MERGER SUB CORPORATION**    *
Four Greenwich Office Park
Greenwich, CT 06830                 *

SERVE ON:  CSC- Lawyers Incorporating
               Service Company       *
               7. St. Paul Street
               Suite 1660          *
               Baltimore, MD 21202
                                       *

and                                   *

**DISTRICT OF COLUMBIA**         *
**Department of Employment Services**  *
4058 Minnesota Avenue, NE
Suite 3900                     *
Washington, D.C. 20019

SERVE ON:  Mayor of the District of
               Columbia              *
               1350 Pennsylvania Ave., N.W.
               Suite 316            *
               Washington, D.C., 20004
AND ON:    Office of the Attorney General  *
               441 4th Street, N.W.
               Washington, D.C., 2001      *

**LAWRENCE D. SCOTT**           *
527 Fox Hall Place, SE
Washington, D.C. 20032              *

and                                   *

**DERRICK MANIGUALT**                          *
Apartment 4
3914 9th Street, NE                            *
Washington, D.C. 20017
                                               *
and
                                               *
**JEFFERY NORWOOD**                            *
2905 Mueserbush Court
Lanham, Maryland 20706
                                               *
and
                                               *
**MICHAEL GARRETT**                            *
2301 Oxon Run Drive
Temple Hills, Maryland 20748
                                               *
and
                                               *
**KENNETH WILLIAMS**                           *
3543 Jay Street, NE
No. 304
Washington, D.C. 20019                         *
                                               *
and
                                               *
**KEVIN MALOY**                                *
9503 Grant Avenue
Manassas, VA 20110                             *
                                               *
and
                                               *
**REGINALD THOMAS**                            *
1419 Southern Avenue
No. 303                                        *
Oxon Hill, Maryland 20745
                                               *
and
                                               *
**ROBERT STROMAN**                             *
3332 4th Street, SE
Washington, D.C. 20032                         *
                                               *
**YULL TRAVERS**
3320 18th Street, SE                           *

Washington, D.C. 20020                                     *

**JOHN DOE, A-Z**                                          *

and                                                        *

**JANE DOE, INC., A-Z**                                    *

    Defendants                         *

  *    *    *    *    *    *    *    *    *    *    *    *

## COMPANION PROPERTY & CASUALTY INSURANCE COMPANY'S COMPLAINT AND REQUEST FOR ENTRY OF ORDER OF INTERPLEADER

       Companion Property & Casualty Insurance Company ("Companion"), by its undersigned counsel, pursuant to the United States Code, Sections 2361, 1335, 1332 and 1397, hereby files its Complaint and Request for Entry of Order of Interpleader and for grounds states as follows:

### JURISDICTION AND VENUE

       1.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1335, because this action is an interpleader action and Companion is a corporation that has issued a surety bond having a value or amount of $500 or more and there are two or more adverse claimants of diverse citizenship as defined in 28 U.S.C. § 1332 who claim to be entitled to such money or to the benefits of such bond and Companion has or will deposit the penal sum amount of the payment bond at issue in this matter into the registry of the Court.

       2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1397, because more than one Defendant resides in the District of Columbia. Further, the project for which the payment bond at issue herein was issued was located in Washington, D.C., any work performed or services provided were performed or provided in Washington, D.C. and the principal on the payment bond, Niyyah Electrical Contractors, LLC, was a corporation existing in and under the laws of Washington, D.C., with its principal place of business located in Washington, D.C.

## PARTIES

3.      Companion is a surety company authorized to issue surety bonds in the District of Columbia, it is a South Carolina Company with its principal place of business located in South Carolina.

4.      Apex Services, Inc. ("Apex"), is the Obligee on the payment bond at issue in this matter, and is a Maryland company with its principal place of business located in Maryland.

5.      Graybar Electric Co., Inc. ("Graybar"), is a claimant against the payment bond at issue in this matter, and is a New York company with its principal place of business located in Missouri.

6.      United Rentals (North America), Inc. ("United Rentals"), is a claimant against the payment bond at issue in this matter, and is a Delaware company with its principal place of business located in Connecticut.  Upon information and belief, United Rentals was merged into UR Merger Sub Corporation, a Delaware company with it principal place of business located in Connecticut.

7.      Branch Group, Inc. t/a Rexel is a potential claimant against the payment bond at issue in this matter, and is a Nevada company with its principal place of business located in Dallas, Texas.

8.      District of Columbia Government, through its Department of Employment Services, is a potential claimant against the payment bond at issue in this matter, and is located in the District of Columbia.

9.      Upon information and belief, Lawrence D. Scott is a former employee of Niyyah and is a claimant against the payment bond in this matter, he is an individual who resides in Washington, D.C.

10.     Upon information and belief, Derrick Manigualt is a former employee of Niyyah and is a claimant against the payment bond in this matter, he is an individual who resides in Washington, D.C.

11.     Upon information and belief, Jeffrey Norwood is a former employee of Niyyah and is a claimant against the payment bond in this matter, he is an individual who resides in Maryland.

12.     Upon information and belief, Reginald Thomas is a former employee of Niyyah and is a claimant against the payment bond in this matter, he is an individual who resides in Maryland.

13.     Upon information and belief, Kevin Maloy is a former employee of Niyyah and is a claimant against the payment bond in this matter, he is an individual who resides in Virginia.

14.     Upon information and belief, Kenneth Williams is a former employee of Niyyah and is a claimant against the payment bond in this matter, he is an individual who resides in Washington, D.C.

15.     Upon information and belief, Michael Garrett is a former employee of Niyyah and is a claimant against the payment bond in this matter, he is an individual who resides in Maryland.

16.     Upon information and belief, Robert Stroman is a former employee of Niyyah and is a claimant against the payment bond in this matter, he is an individual who resides in Washington, D.C.

17.     Upon information and belief, Yull Travers is a former employee of Niyyah and is a claimant against the payment bond in this matter, he is an individual who resides in Washington, D.C.

18.     Upon information and belief, there are potential additional individual defendants, identified as John Doe, A-Z, whose identities and cities and states of residence are unknown at this time.

19.     Upon information and belief, there are potential additional corporate defendants, identified as Jane Doe, Inc., A-Z, whose identities, states of organization, and principal places of business are unknown at this time.

## FACTUAL BACKGROUND

20.     Apex entered into a construction contract with the District of Columbia, Department of Real Estate Services, Contracting and Procurement Division (the "Owner"), Solicitation No. DCAM-2011-B-0087 (the "Contract"), for the Expansion of the Emergency Operations Center at the Unified Communications Center ("Project"), located in Washington, D.C.

21.     Thereafter, Apex entered into a subcontract agreement with Niyyah Electrical Contractors, LLC ("Niyyah") to furnish labor, materials and equipment for certain electrical work required on the Project (the "Subcontract").

22.     As a condition of Niyyah's Subcontract with Apex, Companion as surety, executed and delivered to Apex a Payment Bond on the Project, Bond No.: 00010501 (the "Payment Bond"), with Niyyah as Principal and Apex as Obligee.  A copy of the Payment Bond is attached hereto as **Exhibit 1**.

23.     A dispute arose between Apex and Niyyah regarding performance of the Subcontract work at the Project, payment of laborers and payment for certain equipment, materials and supplies.

24.     As a result of the dispute, Apex terminated Niyyah's Subcontract effective March 29, 2012.

25.     After termination of the Subcontract, Apex undertook completion of Niyyah's work on the Project and made payments to some of Niyyah's employees, sub-subcontractors and suppliers for work performed and/or materials provided to Niyyah on the Project prior to termination.

26.     Companion has received Payment Bond claims from a number of sub-subcontractors and suppliers to Niyyah on the Project, including Graybar, United Rentals and the individual former employees of Niyyah.

27.     Apex has asserted a Payment Bond claim against the Payment Bond seeking recovery for the payments it made to subcontractors, employees and suppliers to Niyyah on the Project.

28.     Companion has been informed by Niyyah that there are other potential claimants against the Payment Bond who were unpaid subcontractors and suppliers to Niyyah on the Project.

29.     Companion has been advised by Apex that the District of Columbia, Department of Employment Services ("DC DES"), has stated that there is a wage and labor violation that will be issued by the DC DES for alleged wage violations by Niyyah from the period February 25, 2012 through March 29, 2012 as a result of Niyyah's alleged failure to properly classify and pay its employees.

30.     The potential exists that other unknown claimants may also have rights and/or claims under the Payment Bond.

31.     All of the known and/or anticipated claims that could be asserted against the Payment Bond total in excess of $499,534.18.

32.     The penal sum limit of the Payment Bond is $289,972.00, which is $209,562.18 less than the total known and/or anticipated claims.  Thus, there are insufficient funds available in the Payment Bond to pay all of the existing and potential claimants under the Payment Bond.

33.     Because of the competing claims that exceed the penal sum limit of the Payment Bond, Companion is prevented from making any payments under the Payment Bond to avoid the risk of potential double or multiple liability, including potential liability in excess of the penal sum of the bond.

34.     There are numerous disputed and adverse claims asserted and which may be asserted against the Payment Bond and there are insufficient funds to satisfy all such claims under the Payment Bond.  The current existing claims of Apex and Graybar alone exceed the penal sum of the Payment Bond.  Thus, multiple parties are competing for the same limited funds, which will not satisfy all of the claims and there exists a risk of multiple separate actions against Companion under the Payment Bond.

35.     Companion seeks the equitable jurisdiction and aid of this Court to determine how and to whom the Payment Bond funds are to be paid and in what amounts and to release Companion from the burden and exposure of administering the fund.

36.     Companion's only liability to the existing claimants and potential claimants is pursuant to the terms of the Payment Bond, Companion has no independent liability to any of the existing claimants and potential claimants but for the Payment Bond.

## COUNT I
### (Interpleader)

37.     Companion incorporates by reference paragraphs 1 through 36 of this Complaint as if fully set forth herein.

38.     All of the known and/or anticipated claims that could be asserted against the Payment Bond total in excess of $499,534.18 and this amount exceeds the penal sum limit of the Payment Bond by $209,562.18.  Thus, there are insufficient funds available in the Payment Bond to pay all of the existing claimants and potential claimants under the Payment Bond.

39.     Upon information and belief, the DC DES intends to assert wage and labor violations against the Payment Bond.

40.     Upon information and belief, additional unknown individual and corporate claimants may have valid claims against the Payment Bond.

41.     To date, Companion has received competing claims against the Payment Bond that greatly exceed the $289,972.00 penal sum of the Payment Bond.  Companion cannot unilaterally determine the appropriate method for distributing the penal sum of the Payment Bond to the various known and unknown claimants.  Companion has brought this action in good faith as a stakeholder of the Payment Bond's funds so that this Court may determine the appropriate method of distributing such funds.

WHEREFORE, Companion Property & Casualty Insurance Company respectfully requests that this Honorable Court issue an Order for Interpleader in the form submitted herewith granting Companion Property & Casualty Insurance Company the following relief:

A.      Accepting Companion Property & Casualty Insurance Company's deposit in the sum of $289,972.00, representing the penal sum of the Payment Bond, into the Court's registry to await further judgment of the Court; and

B.      Enjoin the Defendants listed herein and any unknown claimants from bringing or prosecuting any action against Companion Property & Casualty Insurance Company regarding the Payment Bond; and

C.      Permit Companion Property & Casualty Insurance Company to give notice of publication to unknown claimants against the Payment Bond, John Doe (A through Z) and Jane Doe, Inc. (A through Z), by publishing a notice of this action in accordance with the applicable Rules in *The Washington Post* once a week in each of three successive weeks; and

D.      Discharge Companion Property & Casualty Insurance Company from any and all further liability or obligations with respect to the Payment Bond; and

E.      Award Companion Property & Casualty Insurance Company the expenses incurred in publishing the notice described in subparagraph (C) from the penal sum of the Payment Bond; and

F.      Award Companion Property & Casualty Insurance Company its costs and attorney's fees incurred in bringing this action from the penal sum of the Payment Bond;

G.      Award Companion Property & Casualty Insurance Company any remaining undisbursed funds from the Payment Bond at the end of this action, if any exist; and

G.      Award Companion Property & Casualty Insurance Company such other and further relief as this Court deems just and proper.


                                        /s/Robert W. Hesselbacher
                                        Robert W. Hesselbacher (Bar No. 414412)
                                        Wright, Constable & Skeen, LLP
                                        100 North Charles Street, 16th Fl.
                                        Baltimore, Maryland 21201
                                        410-659-1300
                                        410-659-1350 (fax)
                                        crodgers@wcslaw.com

                                        Attorneys for Plaintiff, Companion Property
                                        & Casualty Insurance Company



# Document A312™ – 2010

## Payment Bond

**CONTRACTOR:**
*(Name, legal status and address)*
Niyyah Electrical Contractors, LLC
568 Foxhall Place SE
Washington, DC 20032-3716

**SURETY:**
*(Name, legal status and principal place of business)*
Companion Property & Casualty Insurance
Company
P.O. Box 100165
Columbia, SC 29202

**OWNER:**
*(Name, legal status and address)*
APEX Service, Inc.
3705 Benning Road NE
Washington, DC 20019-2645

**CONSTRUCTION CONTRACT**
Date:      June 21st, 2011
Amount:   TWO HUNDRED EIGHTY-NINE THOUSAND NINE HUNDRED SEVENTY-TWO AND NO/100THS DOLLARS  ($289,972.00)
Description:
*(Name and location)*
APEX Job#15-1002:  subcontract for Electrical work under Prime Contract "Renovation of the Unified Communications Center (UCC) and UCC Annex  at Washington, DC

**BOND**   00010501
Date:      August 1st, 2011
*(Not earlier than Construction Contract Date)*

Amount:   TWO HUNDRED EIGHTY-NINE THOUSAND NINE HUNDRED SEVENTY-TWO AND NO/100THS DOLLARS ($289,972.00)
Modifications to this Bond:   [ X ] None      [   ] See Section 18

**CONTRACTOR AS PRINCIPAL**
Company:      *(Corporate Seal)*
Niyyah Electrical Contractors, LLC

Signature: _____
Name and
Title:

**SURETY**
Company:      *(Corporate Seal)*
Companion Property & Casualty Insurance Company

Signature: _____
Name and   Attorney-in-Fact David R. Brett
Title:

*(Any additional signatures appear on the last page of this Payment Bond.)*

*(FOR INFORMATION ONLY — Name, address and telephone)*
**AGENT or BROKER:**
Construction Bonds, Inc.
1110 Herndon Parkway, Suite 307
Herndon, VA 20170
703-934-1000

**OWNER'S REPRESENTATIVE:**
*(Architect, Engineer or other party:)*

ADDITIONS AND DELETIONS:
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

AIA Document A312™ – 2010 Payment Bond. The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.

1

EXHIBIT  1

§ 1 The Contractor and Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract, which is incorporated herein by reference, subject to the following terms.

§ 2 If the Contractor promptly makes payment of all sums due to Claimants, and defends, indemnifies and holds harmless the Owner from claims, demands, liens or suits by any person or entity seeking payment for labor, materials or equipment furnished for use in the performance of the Construction Contract, then the Surety and the Contractor shall have no obligation under this Bond.

§ 3 If there is no Owner Default under the Construction Contract, the Surety's obligation to the Owner under this Bond shall arise after the Owner has promptly notified the Contractor and the Surety (at the address described in Section 13) of claims, demands, liens or suits against the Owner or the Owner's property by any person or entity seeking payment for labor, materials or equipment furnished for use in the performance of the Construction Contract and tendered defense of such claims, demands, liens or suits to the Contractor and the Surety.

§ 4 When the Owner has satisfied the conditions in Section 3, the Surety shall promptly and at the Surety's expense defend, indemnify and hold harmless the Owner against a duly tendered claim, demand, lien or suit.

§ 5 The Surety's obligations to a Claimant under this Bond shall arise after the following:

§ 5.1 Claimants, who do not have a direct contract with the Contractor,

    .1   have furnished a written notice of non-payment to the Contractor, stating with substantial accuracy the amount claimed and the name of the party to whom the materials were, or equipment was, furnished or supplied or for whom the labor was done or performed, within ninety (90) days after having last performed labor or last furnished materials or equipment included in the Claim; and

    .2   have sent a Claim to the Surety (at the address described in Section 13).

§ 5.2 Claimants, who are employed by or have a direct contract with the Contractor, have sent a Claim to the Surety (at the address described in Section 13).

§ 6 If a notice of non-payment required by Section 5.1.1 is given by the Owner to the Contractor, that is sufficient to satisfy a Claimant's obligation to furnish a written notice of non-payment under Section 5.1.1.

§ 7 When a Claimant has satisfied the conditions of Sections 5.1 or 5.2, whichever is applicable, the Surety shall promptly and at the Surety's expense take the following actions:

§ 7.1 Send an answer to the Claimant, with a copy to the Owner, within sixty (60) days after receipt of the Claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed; and

§ 7.2 Pay or arrange for payment of any undisputed amounts.

§ 7.3 The Surety's failure to discharge its obligations under Section 7.1 or Section 7.2 shall not be deemed to constitute a waiver of defenses the Surety or Contractor may have or acquire as to a Claim, except as to undisputed amounts for which the Surety and Claimant have reached agreement. If, however, the Surety fails to discharge its obligations under Section 7.1 or Section 7.2, the Surety shall indemnify the Claimant for the reasonable attorney's fees the Claimant incurs thereafter to recover any sums found to be due and owing to the Claimant.

§ 8 The Surety's total obligation shall not exceed the amount of this Bond, plus the amount of reasonable attorney's fees provided under Section 7.3, and the amount of this Bond shall be credited for any payments made in good faith by the Surety.

§ 9 Amounts owed by the Owner to the Contractor under the Construction Contract shall be used for the performance of the Construction Contract and to satisfy claims, if any, under any construction performance bond. By the Contractor furnishing and the Owner accepting this Bond, they agree that all funds earned by the Contractor in the performance of the Construction Contract are dedicated to satisfy obligations of the Contractor and Surety under this Bond, subject to the Owner's priority to use the funds for the completion of the work.

AIA Document A312™ – 2010 Payment Bond. The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.

2

§ 10 The Surety shall not be liable to the Owner, Claimants or others for obligations of the Contractor that are unrelated to the Construction Contract. The Owner shall not be liable for the payment of any costs or expenses of any Claimant under this Bond, and shall have under this Bond no obligation to make payments to, or give notice on behalf of, Claimants or otherwise have any obligations to Claimants under this Bond.

§ 11 The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

§ 12 No suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction in the state in which the project that is the subject of the Construction Contract is located or after the expiration of one year from the date (1) on which the Claimant sent a Claim to the Surety pursuant to Section 5.1.2 or 5.2, or (2) on which the last labor or service was performed by anyone or the last materials or equipment were furnished by anyone under the Construction Contract. whichever of (1) or (2) first occurs. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

§ 13 Notice and Claims to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the page on which their signature appears. Actual receipt of notice or Claims, however accomplished, shall be sufficient compliance as of the date received.

§ 14 When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. When so furnished, the intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

§ 15 Upon request by any person or entity appearing to be a potential beneficiary of this Bond, the Contractor and Owner shall promptly furnish a copy of this Bond or shall permit a copy to be made.

§ 16 Definitions
§ 16.1 Claim. A written statement by the Claimant including at a minimum:
    .1   the name of the Claimant;
    .2   the name of the person for whom the labor was done, or materials or equipment furnished;
    .3   a copy of the agreement or purchase order pursuant to which labor, materials or equipment was furnished for use in the performance of the Construction Contract;
    .4   a brief description of the labor, materials or equipment furnished;
    .5   the date on which the Claimant last performed labor or last furnished materials or equipment for use in the performance of the Construction Contract;
    .6   the total amount earned by the Claimant for labor, materials or equipment furnished as of the date of the Claim;
    .7   the total amount of previous payments received by the Claimant; and
    .8   the total amount due and unpaid to the Claimant for labor, materials or equipment furnished as of the date of the Claim.

§ 16.2 Claimant. An individual or entity having a direct contract with the Contractor or with a subcontractor of the Contractor to furnish labor, materials or equipment for use in the performance of the Construction Contract. The term Claimant also includes any individual or entity that has rightfully asserted a claim under an applicable mechanic's lien or similar statute against the real property upon which the Project is located. The intent of this Bond shall be to include without limitation in the terms "labor, materials or equipment" that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental equipment used in the Construction Contract, architectural and engineering services required for performance of the work of the Contractor and the Contractor's subcontractors, and all other items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials or equipment were furnished.

§ 16.3 Construction Contract. The agreement between the Owner and Contractor identified on the cover page, including all Contract Documents and all changes made to the agreement and the Contract Documents.

AIA Document A312™ – 2010 Payment Bond. The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document. or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.

3

§ 16.4 Owner Default. Failure of the Owner, which has not been remedied or waived, to pay the Contractor as required under the Construction Contract or to perform and complete or comply with the other material terms of the Construction Contract.

§ 16.5 Contract Documents. All the documents that comprise the agreement between the Owner and Contractor.

§ 17 If this Bond is issued for an agreement between a Contractor and subcontractor, the term Contractor in this Bond shall be deemed to be Subcontractor and the term Owner shall be deemed to be Contractor.

§ 18 Modifications to this bond are as follows:


*(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)*

| CONTRACTOR AS PRINCIPAL | | SURETY | |
|---|---|---|---|
| Company: | *(Corporate Seal)* | Company: | *(Corporate Seal)* |
| | | | |
| Signature: | | Signature: | |
| Name and Title: | | Name and Title: | |
| Address: | | Address: | |

AIA Document A312™ – 2010 Payment Bond. The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.

4

# COMPANION PROPERTY AND CASUALTY INSURANCE COMPANY

P.O. Box 100165 (29202)
51 Clemson Road
Columbia, SC 29229

## GENERAL POWER OF ATTORNEY

Know all men by these Presents, that the COMPANION PROPERTY AND CASUALY INSURANCE COMPANY had made, Constituted and appointed, and by these presents does make, Constitute and appoint Andrew C. Heaner of Atlanta, Georgia; Richard L. Shanahan of Atlanta, Georgia; Stefan E. Tauger of Parker, Colorado; Arthur S. Johnson of Atlanta, Georgia; Martha G. Ross of Charlotte, North Carolina; James E. Feldner of West Lake, Ohio; Jeffery L. Booth of Parma, Ohio; Cheryl L. Torrao of Lutz, Florida; Melanie J. Stokes of Atlanta, Georgia; Garry W. Black of Murfreesboro, Tennessee; David R. Brett of Columbia, South Carolina; Donald J. Kersey of Birmingham, Alabama; Donald H. Gibbs of Atlanta, Georgia; Diane L. McLain of Fitchburg, Wisconsin; Julie Klinner of Birmingham, Alabama; Jason S. Centrella of Jacksonville, Florida; Kelley E.M. Nys of Decatur, Georgia; Michael K. Thompson of Atlanta, GA; or Brian Clark of Charlotte, North Carolina, EACH as its true and lawful attorney for it and its name, place and stead to execute on behalf of the said company, as surety, bonds, undertakings and contracts of suretyship to be given to all obligees provided that no bond or undertaking or contract of suretyship executed under this authority shall exceed in amount of the sum of $1,000,000 (One Million Dollars) including but not limited to consents of surety for the release of retained percentages and / or final estimates on construction contracts or similar authority requested by the Department of Transportation, State of Florida and the execution of such undertakings, bonds, recognizances and other surety obligations, in pursuance of the presents, shall be binding upon the Company as if they had been duly signed by the president and attested by any officer of the company in their own proper persons.

This Power of Attorney is granted and is signed and sealed by facsimile under and by the authority of the following Resolution adopted pursuant to due authorization by the Executive Committee of the Board of Directors of the COMPANION PROPERTY AND CASUALTY INSURANCE COMPANY on the 24th day of December, 2003.

RESOLVED, that the Chairman, President or any Vice President of the Company be, and that each or any of them hereby is, authorized to execute Powers of Attorney qualifying the attorney named in the given Power of Attorney to execute in behalf of the COMPANION PROPERTY AND CASUALTY INSURANCE COMPANY bonds, undertakings and all contracts of suretyship; and that any Officer, Secretary or any Assistant Secretary be, and that each or any of them hereby is, authorized to attest the execution of any such Power of Attorney, and to attach thereto the seal of the Company.

FURTHER RESOLVED, that the signature of such officers and the seal of the Company may be affixed to any such Power Attorney or to any certificate relating thereto by facsimile, and any such Power of Attorney or certificate bearing such ...csimile signatures or facsimile seal shall be valid and binding upon the Company when so affixed and in the future, with respect to any bond undertaking or contract of suretyship to which it is attached.

In Witness Whereof, the COMPANION PROPERTY AND CASUALTY INSURANCE COMPANY has caused its official seal to be hereto affixed, and these presents to be signed by its President and attested by its Vice President this _25th_ day of _FEBRUARY_, 2011.

Attest: COMPANION PROPERTY AND CASUALTY INSURANCE COMPANY

By: _____                           _____
       Charles M. Potok, President                          Curtis C. Stewart, Senior VP & COO

STATE OF SOUTH CAROLINA
COUNTY OF RICHLAND
On this _25th_ day of _FEBRUARY_, 2011, before me personally came the above named officers to me known, who being by me duly sworn, did depose and say that they reside in Columbia, in the County of Richland, State of SC, at Columbia; that they are the President and Vice President & CFO of COMPANION PROPERTY AND CASUALTY INSURANCE COMPANY, the corporation described in and which executed the above instrument; that they know the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed and that they signed their names thereto pursuant to due authorization.

_____ Notary Public, State of SC, qualified in Richland County    Commission Expires: 5/8/2017
WILLIAM R. MELTON JR.

STATE OF SOUTH CAROLINA
COUNTY OF RICHLAND
I, the undersigned, an officer of COMPANION PROPERTY AND CASUALTY INSURANCE COMPANY, a South Carolina Corporation DO HEREBY CERTIFY that the foregoing and attached Power of Attorney remains in full force and has not been revoked; and furthermore, that the Resolution of the Executive Committee of the Board of Directors set forth in the Power of Attorney is now in force.

...ned and sealed at the City of Columbia, Dated the _1st_ day of _August_ _2011_

Bond Number: 00010501
                                                          _____
                                                          Curtis C. Stewart, Senior VP & COO

**Number 29981**