UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                   )
COMPANION PROPERTY &               )
CASUALTY INSURANCE CO.,            )
                                   )
          Plaintiff,               )
                                   )
     v.                            )     Civil Action No. 13-436 (RWR)
                                   )
APEX SERVICE, INC., et al.,        )
                                   )
          Defendant.               )
_____)
```

MEMORANDUM OPINION

Companion Property & Casualty Insurance Co. ("Companion")
filed a complaint and action of interpleader to determine the
proper distribution of the proceeds of payment bond number
00010501 (the "Payment Bond") among Apex Service, Inc. ("Apex")
and all other potential claimants.  Compl. at 4, 7, 10.  The
matter was referred to Magistrate Judge Alan Kay, who issued a
report and recommendation finding that Companion should be
discharged from the action, Companion should receive attorneys'
fees and costs, and the remaining sum of the Payment Bond should
be disbursed to Apex.  Report and Recommendation ("R&R") at 16.
Because no party has objected to the report and recommendation,
Companion appropriately filed this action of interpleader as a
disinterested stakeholder, the recommended award of fees and
costs is fair, and Apex is the sole remaining interpleader

defendant, Magistrate Judge Kay's recommendations will be adopted.[1]

BACKGROUND

Apex entered into a construction contract with the District of Columbia Department of Real Estate Services, Contracting and Procurement Division for expansion of the Emergency Operations Center at the Unified Communication Center.  R&R at 2.  Apex then entered into a subcontract with Niyyah Electrical Contractors, LLC ("Niyyah") to furnish labor, materials, and equipment for certain electrical work on the project.  Id.  As a condition of the subcontract, and under D.C. Code § 2-201.01, on August 1, 2011, Niyyah obtained the Payment Bond from Companion with a total value of $289,972.00.[2]  Id. at 2-3.

On March 29, 2012, Apex terminated Niyyah's subcontract as a result of a dispute that arose regarding performance of Niyyah's subcontract work, payment of laborers, and payment for certain equipment, materials, and supplies.  Id. at 3.  Apex asserted a claim against the Payment Bond as a result of payments it made to Niyyah employees, subcontractors, and

_____

[1] Apex requests a hearing on the R&R.  That request will be denied as moot.

[2] Footnote five of the R&R contains a typographical error stating that the total value of the Payment Bond is $292,972.00. R&R at 6 n.5.  However, the remainder of the R&R correctly reflects that the total value is $289,972.00 and all derivative calculations are correctly made in relation to the correct total value.

suppliers for work completed or materials provided prior to the subcontract's termination. Id. Companion also received claims from a number of sub-subcontractors and suppliers. Id.

Because of multiple outstanding and anticipated claims against the Payment Bond totaling at least $499,534.18, Companion requested an order for interpleader and deposited the value of the Payment Bond in the Court's registry. Id. at 10. Companion also asked that the defendants be enjoined from bringing an action against it under the Payment Bond. Id.

Branch Group, Inc. t/a Rexel ("Branch") filed an answer to the complaint on May 1, 2013, claiming it is owed $38,300.42 for "outstanding invoices incurred by Niyyah[.]" Branch Answer at 5. Additionally, Lawrence D. Scott, a former Niyyah employee, filed a *pro se* motion for unpaid wages on January 10, 2014, seeking approximately $14,500.00[3] of the Payment Bond funds. Scott Mot. Unpaid Wages at 1. On December 26, 2013, Companion and Apex filed a stipulation agreeing that Companion should be discharged from liability under the Payment Bond, that Companion should be reimbursed $12,000.00 for attorneys' fees and expenses, and that Apex should be awarded the remainder of

---

[3] The motion states that Scott received $7,800.00 but that the total should have been about $25,000. Scott Mot. Unpaid Wages at 1. The motion thus asks for Scott to receive about $17,200.00. Id. However, at oral argument before Magistrate Judge Kay, Scott stated that he was paid $10,500.00. R&R at 2. The magistrate judge therefore concluded that Scott requests only $14,500.00. Id. at 15.

-4-

the Payment Bond funds.  Companion & Apex Stipulation at 1.  The
magistrate judge found that all potential claimants who have
filed answers except for Apex, Scott, and Branch have settled or
otherwise relinquished their claims to the Payment Bond funds.
R&R at 2.

DISCUSSION

A district judge may designate a magistrate judge to
conduct hearings and submit findings of fact and recommendations
for the disposition of pretrial motions.  28 U.S.C.
§ 636(b)(1)(B) (2014); LCvR 72.3(a) (2014); see Elgin v. Dep't
of Treasury, 132 S. Ct. 2126, 2138 (2012)(noting that Congress
has vested "reviewable factfinding authority" in magistrate
judges by authorizing them to "make findings of fact relevant to
dispositive pretrial motions").  Absent clear error, if no party
has made an objection to the magistrate judge's recommendation
within fourteen days, a district court judge may accept, reject,
or modify, in whole, or in part, the findings or
recommendations.  28 U.S.C. § 636(b)(1)(C); LCvR 72.3(b); see
Powell v. Bureau of Prisons, 927 F.2d 1239, 1248 (D.C. Cir.
1991) (finding that it is appropriate for a district court judge
to adopt a magistrate judge's report and recommendation under a
clear error standard of review if no objections were received).

-5-

I.   FEDERAL INTERPLEADER UNDER 28 U.S.C. § 1335

     The magistrate judge found that Companion should be
discharged from liability because the court has jurisdiction to
hear the case and Companion is a disinterested stakeholder.  R&R
at 5-6.  The magistrate judge acknowledged that jurisdiction
exists under 28 U.S.C. § 1335 because "'the value of the
property exceeds $500, two or more claimants are diverse, and
Companion has deposited the property into the registry of the
court.'"  Id. at 5 (quoting 7/17/2013 Order at 1); see 28 U.S.C.
§ 1335 (2014) (providing the requirements for district court
jurisdiction over interpleader actions).  A plaintiff-
stakeholder may be discharged from liability if it is
disinterested and it meets the statutory requirements of 28
U.S.C. § 1335.  R&R at 4-5; see Star Ins. Co. v. Cedar Valley
Express, LLC, 273 F. Supp. 2d 38, 40 n.2 (D.D.C. 2002) (noting
that if "a court determines that interpleader is appropriate
[under § 1335], it may discharge the stakeholder-plaintiff from
the action if it is disinterested in the distribution of the
[interpleader funds]").  The magistrate judge found that
Companion is a disinterested stakeholder because it does not
make a claim to the Payment Bond funds, except for attorneys'
fees and costs, which do not make an "otherwise disinterested
stakeholder an interested stakeholder."  R&R at 5-6 (citing
Orseck, P.A. v. Servicios Legals De Mesoamerica S. De R.L., 699

F. Supp. 2d 1344, 1349 (S.D. Fla. 2010); WRIGHT & MILLER, Federal
Practice and Procedure § 1719 (3d. ed. 2013)).  The magistrate
judge correctly concluded that, as a disinterested stakeholder
in a properly submitted interpleader action, Companion should be
discharged from further liability with prejudice.  That portion
of the report and recommendation will be adopted.

II.  EQUITABLE DISTRIBUTION OF INTERPLEADER FUNDS

A.  Interpleader defendants

In its complaint, Companion named as defendants Apex,
Branch, District of Columbia Department of Employment Services,
Graybar Electric Co., Inc., "Jane Dce, Inc., A-Z," United
Rentals (North America), Inc. ("United Rentals"), UR Merger Sub
Corporation,[4] "John Doe, A-Z,"[5] Michael Garrett, Kevin Maloy,
Derrick Manigualt, Jeffery Norwood, Lawrence Scott, Robert
Stroman, Reginald Thomas, Yull Travers, and Kenneth Williams.
Compl. at 1-4.

The magistrate judge found that only Apex, Branch, and
Scott continue to make a claim against the interpleader funds.
R&R at 7.  Graybar Electric Co, Inc. and former Niyyah employees

_____

[4] UR Merger Sub Corporation was the former name of United
Rentals, Companion Mem. Supp. Mot. Discharge at 3, so this
entity will be referred to as United Rentals.

[5] "John Doe, A-Z" and "Jane Doe, Inc., A-Z" were included to
account for "any remaining unknown claimants[,] which
[Companion] properly informed of the action via public notice."
R&R at 7.

Garrett, Maloy, Manigualt, Norwood, Scott, Stroman, Thomas, Travers, and Williams signed documents releasing Companion from liability in exchange for payments from Apex.  Companion Mem. Supp. Mot. Discharge at 10-11.  United Rentals forfeited its right to make a claim against the funds because it defaulted when it failed to file any responsive pleading.  R&R at 14; see Fed. R. Civ. P. 12(a)(1)(A)(i), 55(a) (2014) (providing a defendant 21 days to serve an answer and indicating that "the clerk must enter the party's default[]" when "failure [to serve an answer] is shown by affidavit or otherwise"); Companion Mem. Supp. Mot. Discharge at 11 n.6 ("United Rentals' Payment Bond claim is also forfeited because it failed to file a responsive pleading[.]").  Finally, the District of Columbia Department of Employment Services was dismissed from the case by joint stipulation.  Joint Stipulation of Dismissal at 1.

Although Scott signed a release on August 30, 2013, Companion Mot. Discharge, Ex. E at 6; R&R at 14 n.15, he filed a motion for unpaid wages on January 10, 2014.  Scott Mot. Unpaid Wages at 1.  Additionally, Branch continues to assert a claim of $38,300.42 against the interpleader funds.  Branch Opp'n to Mot. to Strike at 3.  Apex asserts that it should receive the total value of the payment bond less Companion's attorneys' fees and costs.  Companion & Apex Stipulation at 1.

1.   Lawrence D. Scott

Scott signed a document releasing any future claim on the
interpleader funds and the magistrate judge noted that Scott's
motion for unpaid wages did not provide any reason why the
release would be "invalid or inapplicable."  R&R at 14.  As a
contract, the release binds Scott to its terms unless an
essential element is missing.  See Henke v. United States Dep't
of Commerce, 83 F.3d 1445, 1450 (D.C. Cir. 1996) (stating that
the "essential elements" of a contract are "competent parties,
lawful subject matter, legal consideration, mutuality of assent
and mutuality of obligation."); Wolcott v. Ginsburg, 697 F.
Supp. 540, 544 (D.D.C. 1988) (confirming that, when determining
whether the terms of a release are binding, "releases are to be
treated as contracts, and general contract principles apply.").
Scott does not address the release or assert that it is missing
any of the elements of a valid contract.  Thus, the magistrate
judge's recommendation to deny Scott's motion for unpaid wages
and to grant Apex's motion to strike Scott's motion will be
adopted.[6]

_____

[6] After Scott failed to respond to Apex's motion to dismiss
within the allotted time, Apex filed a second motion to strike
Scott's motion.  See Apex Mot. to Strike or Dismiss Scott Mot.
at 2.  The magistrate judge correctly concluded that the second
motion could be denied as moot because Apex's first motion to
strike should be granted.  R&R at 15.

-9-

2.   Branch

The terms of the Payment Bond required any action asserting
a claim against the Bond to be filed within one year of when
"the last labor or service was performed by anyone or the last
materials or equipment were furnished by anyone under the
Construction Contract."  Compl., Ex. 1 at 3; see R&R at 9-10.
Under the terms of the Payment Bond, the "Construction Contract"
is the subcontract between Niyyah and Apex.  Compl., Ex. 1 at 1,
3; see R&R at 9.  Further, the subcontract between Niyyah and
Apex was terminated on March 29, 2012, so Branch had to initiate
its suit by March 29, 2013.[7]  See R&R at 9-10.  By Branch's own
admission, the suit was initiated when Companion filed the
interpleader action on April 4, 2013.  Id. at 12.  The
magistrate judge correctly concluded that Branch's claim against
the interpleader funds is time-barred, and that Apex's motion to

_____

[7] Also, the magistrate judge determined that under D.C. Code
§ 2-201.02, any action had to be initiated within one year of
when "the last labor or material was supplied by the claimant."
R&R at 12.  Branch was a subcontractor to Niyyah, so it could no
longer perform labor under the contract after Niyyah's contract
was terminated on March 29, 2012.  Id.  Thus, a suit had to be
brought by March 29, 2013 under D.C. Code § 2-201.02 as well as
under the Payment Bond.  Accordingly, D.C. Code § 2-201.02 is
immaterial because the terms of the Payment Bond apply, absent
any conflict with local law.  Id. at 11 n.11; see McDonald v.
Thompson, 184 U.S. 71, 74 (1902) (finding that the distinction
between whether an obligation was incurred by statute or under a
contract was immaterial when both required that an action be
initiated within four years).

dismiss Branch's claim should be granted.  R&R at 11, 16.  That portion of the Recommendation will be adopted.

    3.  Apex

    The magistrate judge found that Apex is the sole remaining interpleader defendant and Apex has already paid other interpleader defendants from its own money.  See id. at 13, 16. He concluded that Apex should receive at least the remaining interpleader funds, less Companion's attorneys' fees and costs. Id.  The total payment bond value is $289,972.00 and Companion has requested $12,000.00 in attorneys' fees and costs.  Id. at 16.  Therefore, Apex would receive either $277,972.00 or, if Companion were not awarded attorneys' fees and costs, the full $289,972.00 Payment Bond value.  Id.  As is explained below, Companion will be awarded attorneys' fees and costs, leaving $277,972.00 for Apex.

    B.  Companion

    Companion moved to be discharged from further liability on the Payment Bond and sought an award of $18,822.50 in attorneys' fees and $2,441.04 in costs.  Companion Mem. Supp. Mot. Discharge at 9.  Companion & Apex later stipulated to a $12,000 award of attorneys' fees and costs to Companion.  Stipulation between Companion & Apex at 1.

    A court may "award attorneys' fees and costs [from the interpleader funds] to [a disinterested] plaintiff stakeholder

in an interpleader action[] whenever it is fair and equitable to do so."  Id. (citing Aaron v. Mahl, 550 F.3d 659, 667 (7th Cir. 2008); Rhoades v. Casey, 196 F.3d 592, 603 (5th Cir. 1999); WRIGHT & MILLER at § 1719).  Under the circumstances, the magistrate judge fairly concluded that $12,000.00 is a reasonable amount to award in attorneys' fees and costs to Companion, especially where Apex and Companion agreed to it, and Apex is the sole remaining interpleader defendant.  R&R at 6; Stipulation between Companion & Apex at 1; see Discussion supra Part II(A); cf. Immigration & Naturalization Service v. Jean, 496 U.S. 154, 155, 160 (1990) (acknowledging that parties can stipulate to the amount received in reasonable attorneys' fees under the Equal Access to Justice Act).  Accordingly, the magistrate judge's recommendation that Companion be awarded $12,000.00 in attorneys' fees and costs and that Apex receive the remaining $277,972.00 will be adopted.

                              CONCLUSION

     No party objected to the report and recommendation. Companion is a disinterested stakeholder and the recommended award of attorneys' fees and costs is fair.  Apex, as the sole remaining claimant, is entitled to the remaining Payment Bond value.  Therefore, Magistrate Judge Kay's report and recommendation is adopted in full.  An appropriate final order accompanies this Memorandum Opinion.

-12-

SIGNED this 29th day of December, 2014.


_____/s/_____
RICHARD W. ROBERTS
Chief Judge